IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| SHERRY M. ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-6160-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Alan Stuart Graf, P.C.
P. O. Box 98
Summertown, Tennessee  38483

　　　　Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

      David Morado
      Regional Chief Counsel
      David M. Blume
      Special Assistant United States Attorney
      Social Security Administration
      Office of the General Counsel
      701 5th Avenue, Suite 2900 M/S 901
      Seattle, Washington  98104-7075

           Attorneys for Defendant

KING, Judge:

Plaintiff Sherry Allison brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Allison had severe impairments of residuals of carpal tunnel syndrome treated by surgery, a right rotator cuff tear, chronic myofascial/fibromyalgia pain, obesity, and a chronic obstructive pulmonary disorder. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security

Page 4 - OPINION AND ORDER

Regulations. After reviewing the medical record, the ALJ concluded that Allison could perform a reduced range of light exertional work with lifting limited to 20 pounds occasionally and 10 pounds frequently, could stand/walk for six hours in an eight-hour day, could sit for six hours in an eight-hour day, required a sit/stand option so that she could change positions at will, could not perform overhead work involving the right shoulder, and could not work in environments causing exposure to gases/fumes. The ALJ found that Allison could not perform her past relevant work but had the residual functional capacity to work as a food and beverage order taker, document preparer, or gate tender and, consequently, was not disabled under the Act.

## FACTS

Allison, who was 44 years old at the time of the ALJ's decision, claims that she has been disabled since January 1, 2003 due to spinal arthritis, a back injury, and emphysema. Allison completed high school and has work experience as a teacher's aid, fast food worker, short order clerk, home attendant, and 17 years as a certified nurse assistant.

Allison claims to have constant burning, aching, stinging, sharp pain in her back, hips, and legs and takes narcotic pain relievers. She states that she can lift about 20 pounds, can only stand for 15 to 20 minutes at a time, and can sit for 30 minutes but it causes her legs and feet to fall asleep. At the time of the hearing, Allison washed the dishes and did the laundry but her teenagers vacuumed the house because vacuuming hurts Allison's back. She stopped doing yard work a couple of years before the hearing. Four or five times a day, Allison lies down for about 20 minutes to relieve the pain. Allison also complains of difficulty breathing during four or five months of the year, particularly when she walks. Allison does the grocery shopping but uses an electric scooter provided by the store.

The ALJ asked Allison at the hearing:

> Q       Okay. Well, if there was a type of work where you could sit or stand and alternate between sitting or standing and not have to do any significant lifting or maybe just a chore such as inspecting items, sorting items, putting labels on things, could you do a job as simple as that and as non-exertional as that?
>
> A       If I didn't have to – if I could be able to sit and stand when I needed to, I might be able to. I don't know. With my shoulder being like it is, I, I don't know if I could --

Tr. 475.

## DISCUSSION

I.     <u>Subjective Symptom Testimony</u>

Allison contends that the ALJ improperly rejected her subjective complaints. She argues that the nature of fibromyalgia does not lead to more than mild objective findings. Allison claims that her reported activities are sporadic at best and not inconsistent with the activities of a person who is disabled.

The Commissioner argues that Allison was never properly diagnosed with fibromyalgia and notes that she did household chores four to six hours a day, in addition to babysitting four children at times.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of

the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ concluded that Allison's allegations of disabling impairments cannot be wholly accepted as credible. He noted that Allison's allegations are disproportionate to the mild objective findings in the medical record. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's characterization of the objective findings as mild is supported by the record. Concerning Allison's argument based on her fibromyalgia, the ALJ noted that she was diagnosed by her primary care physician, Dr. Orwick, and was never seen by a rheumatologist. The ALJ also noted that Dr. Orwick only documented that Allison had multiple trigger points for the condition. The chart notes do not document if she met the American College of Rheumatology's criteria of pain in at least 11 of the 18 trigger points or if she reacted to the control points. I note that the July 1, 2005 chart note states only "Fibromyalgia – new diagnosis" and gives no information on Allison's reaction to the trigger point testing. The disproportion between the symptoms and the mild objective findings is a valid reason to discredit her subjective symptom testimony.

The ALJ reasoned that Allison's activities, including babysitting for foster children, driving, and shopping, were more consistent with a person who could sustain light work than with a person who is totally disabled. I do not think the record supports the reason concerning

Page 7 - OPINION AND ORDER

the babysitting or the driving. Allison testified that she only drives around Lebanon because she cannot sit still for longer distances. She had a relative drive her to the hearing because it was a 50 minute drive. Allison babysat her mother's four foster children but described the work as quite sporadic. Allison would babysit if her mother had an appointment but she was only paid by her mother paying her telephone bill. That would not equate to very many hours of babysitting. The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson, 359 F.3d at 1197.

The record does indicate that Allison goes grocery shopping for two to three hours although by the time of the hearing she claimed to always use a scooter at the store. I also note that in June 2005, Allison stated that she did four to six hours of housework a day. In October 2005, only four months later, Allison completed the same form but said that she did two hours of housework a day. There is no indication in the medical records of a trauma or surgery causing this rapid decline in ability. The ALJ's reason–that some of Allison's activities are inconsistent with disability–is valid.

The ALJ noted that Allison's medical treatment has been far less than what would be expected for someone dealing with debilitating symptoms. I agree with this characterization. Allison had a successful hysterectomy, successful carpal tunnel release, and a successful excision of an anal abscess. If you ignore the medical records for these problems, which Allison does not claim are causing her disability, her medical record is smaller than most Social Security cases which come before me. This is a valid reason.

The ALJ also relied on Allison's equivocal answer, quoted above, on whether she could work particular types of jobs. Moreover, Allison's shoulder pain did not begin until years after her alleged onset date. This is also a valid reason.

In summary, after disregarding the reasoning based on Allison's babysitting and driving activities, I find that the ALJ gave specific, clear and convincing reasons for discrediting Allison's subjective symptom testimony.

II.     Opinion of Treating Physician

Allison argues that the ALJ gave insufficient reasons to reject the opinion of her treating physician for over 20 years, Dr. Kenneth Orwick. Allison notes that Dr. Orwick remarked in several progress notes that her pain was disabling. She argues that the ALJ did not explain how Dr. Orwick's opinion is contradictory to the medical evidence as a whole. Allison contends that it is inconsistent with the nature of fibromyalgia to cite a lack of objective evidence to support a finding that the symptoms of fibromyalgia are not severe.

The Commissioner claims that Dr. Orwick's opinion was vague and equivocal and contends that Dr. Orwick never properly diagnosed fibromyalgia.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another

Page 9 - OPINION AND ORDER

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Widmark</u>, 454 F.3d at 1066 n.2.

> On September 14, 2007, Dr. Orwick responded to a letter from Allison's attorney:
>
> > I do not believe Ms. Allison would be dependable for a 40 hour job with her pain problems. Get[ting] a job that makes Ms. Allison feel better, would actually help on the depression and some of her symptoms. [It] may also be a motivator to be able to lose weight. I believe the [sic] Ms. Allison would miss more than two days a month by her present symptom presentation. My conclusion would be based on the way the patient presents in the office with chronic pains, and depression.

Tr 381-82. In support of this conclusion, Dr. Orwick noted that Allison's objective findings are primarily the posture problems and general appearance of severe central obesity. He noted that a diabetic blood test was minimally elevated and recent laboratory work was otherwise normal. He did not have a breathing test to document emphysema but her chest X-rays showed mild disease. X-rays of her shoulder show mild degenerative problems. He did not have X-rays of other body joints. "The examination in the past had shown multiple trigger points consistent with fibromyalgia and and [sic] its more of the review of sleep problems and multiple body symptoms to go along with the fibromyalgia." Tr. 381. Dr. Orwick stated, "It is difficult to connect Ms. Allison's condition to symptoms in that there are very few measurable findings with her problems list." <u>Id.</u> According to Dr. Orwick, the diagnosis of depression was based on Alllison's reports of poor sleep, poor energy, poor interest in activities, and her subjective report that she is depressed.

Page 10 - OPINION AND ORDER

The ALJ reasoned that the conclusion that someone is disabled to work is an opinion on the ultimate issue that is reserved for the Commissioner and outside the medical realm.

Under SSR 96-5p, the ALJ must "evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner," such as Dr. Orwick's conclusion that Allison is disabled. I disagree with Allison's contention, however, that the ALJ failed to do so, as explained next.

The ALJ noted that although Dr. Orwick concluded on several occasions that Allison is "disabled," he did not detail actual functional limitations and recommended that Allison see a rehabilitation specialist because there is no one medical factor that is totally disabling. I also saw no place in the medical record in which Dr. Orwick stated any functional limitations. The doctor's comment that she should see a rehabilitation specialist, along with his statement that getting a job would help with her symptoms, undercut his conclusion that she is unable to work.

The ALJ also reasoned that Dr. Orwick's generalized opinion is contradictory to the medical evidence as a whole. The ALJ then discussed the details on the minimal objective findings Dr. Orwick mentioned in his response. The ALJ also explained his wariness about Dr. Orwick's fibromyalgia diagnosis. Because of the contradictions, the ALJ concluded that the doctor's belief that Allison is unable to sustain work is based on accepting her reports rather than on objective medical evidence.

Dr. Orwick's response itself details the contradictions between Allison's symptoms and the medical evidence. Objectively, Allison had normal laboratory results other than minimally elevated diabetic blood test, mild emphysema as shown on X-rays, mild degenerative problems

Page 11 - OPINION AND ORDER

in her shoulders as shown on X-rays, and "multiple trigger points." Tr. 381. A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). As discussed above, the ALJ validly rejected Allison's symptom testimony. Dr. Orwick himself could not connect Allison's condition to the measurable findings, even though he diagnosed fibromyalgia. As discussed above, Dr. Orwick's fibromyalgia diagnosis is marginal at best. The evidence supports the ALJ's reasoning that Dr. Orwick's conclusion is contradictory to the medical record.

In summary, I find that the ALJ rejected Dr. Orwick's opinion for clear and convincing reasons.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

Dated this ___30th___ day of March, 2009.

          /s/ Garr M. King
          Garr M. King
          United States District Judge